# THE CITY OF DETROIT v. AMOS CHAFFEE.

*Municipal corporations—Charter of Detroit—Sidewalks—Failure to repair—Liability of land-owner to city for injury sustained by traveler—Construction of statutes.*

1. A land-owner in the city of Detroit, who neglects to build or repair a sidewalk in front of his premises pursuant to a *legal* notice from the board of public works, is liable to the city for any accident or injuries occurring by reason of such neglect.

2. The following propositions are summarized from the opinion of Mr. Justice CHAMPLIN:

   *a*—Plaintiff's right of recovery depends upon whether it was defendant's *primary* duty, as between him and the city, to keep the sidewalk in front of his premises in repair, so as not to cause accident or injury to persons traveling over the same.

   *b*—*Exclusive* control of the streets, including the sidewalks, is by the charter conferred upon the common council, with whom it is entirely discretionary to say when and where sidewalks shall be constructed in front of adjacent premises.

   *c*—The *duty* imposed upon an adjacent land-owner to construct or keep in repair a sidewalk in front of his premises is *first* im-

posed *when* the common council takes action under and in accordance with the provisions of the city charter; *whereupon* such duty is *primarily* laid upon such owner, and *secondarily* upon the board of public works, an agent of the city, upon the neglect of such owner to perform said duty, which *latter* action does not relieve such owner from liability.

*d*—Where a statute (charter) attempts, in derogation of the common law, to *create* a liability, the Court cannot go beyond its clearly-expressed provisions, and such statutes are not to be extended or enlarged in their scope by construction.

*e*—In order to give effect to a statute, courts will sometimes transpose sentences, so as to place them in their just connection with the context to which they relate

*f*—The charter of the city of Detroit, imposing the duty upon adjacent land-owners to build or repair sidewalks, and creating a liability for neglecting so to do, should be construed as if to read " and if such agent, owner, or occupant shall neglect, for a time to be specified in the ordinance, to do such building or repairing, the owner so neglecting to build or repair shall be liable to the city for any accident or injuries occurring by reason of such neglect," etc.; the words " *such neglect* " referring to the owner. "so neglecting to build or repair " within the time limited, which neglect necessarily commences at the expiration of such time.

*g*—The duty resting upon such land-owner and the city was imposed upon *each*, and they were not joint *tort-feasors;* and the neglect to repair was the neglect of *each,* and not their *joint* neglect; but, were they *in pari delicto*, it would be a sufficient answer that the statute expressly authorizes the action to be brought in certain contingencies, such as are detailed in the record in this case.

Error to Wayne. (Reilly, J.) Submitted on briefs April 13, 1888. Decided April 27, 1888.

Action on the case to recover the amount of a judgment against the city on account of a defective sidewalk of adjacent land-owner. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Henry M. Duffield (John W. McGrath,* of counsel), for appellant.

*Otto Kirchner,* for defendant, contended as stated in the opinion.

CHAMPLIN, J.   The facts in this case are well stated in the brief of the attorneys for the plaintiff, as follows:

"Elizabeth C. Thomas, who was an alien, was injured by a fall upon a defective sidewalk in front of the premises belonging to the defendant, on Woodward avenue, in the city of Detroit, on April 1, 1886.   She presented her claim to the common council of the city of Detroit, in writing, under the provisions of the city charter.   Upon the rejection of the claim by the common council, she commenced suit, on June 29, 1886, in the circuit court of the United States for the Eastern district of Michigan.

"The city of Detroit, through its city counselor, notified the defendant in this cause of the commencement of the suit, calling his attention to the notice to repair said walk, which had been served upon him some time before the accident, and the claim of the city of Detroit that, by reason of the defendant's neglect to repair said walk, the injuries complained of happened to the plaintiff, if any injuries were sustained by her.   The city further notified the defendant that he was at liberty to defend the suit, and that any judgment which might be recovered against the city in said suit would be treated by the city as binding and conclusive on the defendant as to his liability and as to the amount of damages.

"In reply, Mr. Chaffee's attorney, Mr. Otto Kirchner, wrote that the defendant had instructed him to aid in the defense of the case, but that Mr. Chaffee repudiated all liability of any kind to answer over to the city of Detroit, refused to take upon himself the responsibility of the defense of said action, and desired it expressly understood that, notwithstanding any participation in the defense of said action, he would maintain and insist that he was not bound by the result of said action.

"Upon the trial of the case of Elizabeth C. Thomas against the city of Detroit, in the United States court, the city did not appear, and defendant's attorney in this cause cross-examined the witnesses for the plaintiff, and introduced the testimony of witnesses, including the testimony of the defendant in this cause, Amos Chaffee, to rebut the case made by the plaintiff in said cause against the city of Detroit.   The

jury rendered a verdict in favor of the plaintiff for $2,500 damages, upon which judgment was rendered, including $60.40 costs of suit. After having paid the judgment, the city of Detroit notified the defendant in this cause of that fact, and that, unless the defendant reimbursed the city, suit would be begun at once. The defendant in this cause not responding, the city of Detroit commenced this action.

"Upon the trial thereof, proof was introduced tending to show, in addition to the facts above stated, that the plaintiff was and is a municipal corporation, and that Woodward avenue is, and for 15 years last past has been, a public highway, and that an ordinance, extracts from which will be referred to hereafter, was in force before and on August 1, 1885. Plaintiff also gave evidence of the action of the board of aldermen and board of councilmen directing the board of public works to notify the owner of the premises where the accident occurred to construct new sidewalks in front of said lot, in accordance with the ordinance and the city charter.

"Plaintiff further introduced evidence tending to show that notice was duly served upon the defendant in this cause in pursuance of said resolution, and also testimony concerning a conversation between Mr. Alexander Chapoton, of the board of public works of the city of Detroit, and the defendant, Chaffee, and an understanding between said Chaffee and Chapoton that, if anybody was hurt by reason of Chaffee's delay in repairing the sidewalk, Chaffee would be responsible for it, in reliance upon which the board of public works built no walk.

"The plaintiff also introduced testimony tending to show that the place named in said notice was the place where the accident to Mrs. Thomas happened, and that the premises mentioned in the notice belonged to the defendant, Chaffee, and were occupied by him at the time of the accident.

"And also introduced in evidence the declaration, plea, minutes of trial, verdict, judgment, and taxation of costs in the suit of *Elizabeth C. Thomas v. The City of Detroit,* in the circuit court of the United States for the Eastern district of Michigan.

"Thereupon the plaintiff rested its case, and defendant's counsel moved the court to direct a verdict for the defendant upon the case made by the plaintiff, which motion was, after argument, and consideration by the court, granted.

"To this ruling, plaintiff, by its counsel, then and there duly excepted.

" A verdict was rendered by the jury under the direction
of the court, and judgment entered thereon.

" The sole error assigned is upon the charge of the court
directing a verdict in favor of the defendant.

" The charter of the city of Detroit, in force at the time of
the accident and proceedings in this cause, contained the fol-
lowing provision:

" ' The common council shall have power to provide and ordain by
ordinance that, whenever any sidewalk requires to be built or
repaired, the said council may direct the board of public works to
notify the owner, agent, or occupant of any lot or parcel of land in
front of or adjacent to which such walk is required to be built
or repaired, to build or repair the same; and that if such agent,
owner, or occupant shall neglect, for a time to be specified in the
ordinance, to do such building or repairing, it shall be the duty of
the said board to at once do or cause the same to be done, and in such
case the expense thereof shall be assessed upon such lot or parcel of
land, and shall be a lien thereon until collected and paid in a manner
to be prescribed in such ordinance; and the owner so neglecting to
build or repair shall be liable to the city for all damages which shall
be recovered against the city for any accident or injuries occurring
by reason of such neglect, and also to prosecution in the recorder's
court, and on conviction to be fined not to exceed $500, and the
penalties in the city charter elsewhere provided.' Local Acts, Mich.
1883, p. 614.

" Substantially the above provision has been for many
years included in former charters of the city of Detroit.
Under the authority of this section of the charter an ordi-
nance had been passed by the common council of the city of
Detroit, and was in force before and on August 1, 1885, pro-
viding, among other things, as follows:

" 'Sec. 13. Whenever the council shall order any sidewalk to be
built, it shall be the duty of the board of public works to notify the
owner, agent, or occupant of any lot in front of or adjacent to which
such walk is to be constructed, to build the same within ten days
from the date of the notice. If such owner, agent, or occupant shall
neglect to build said walk within the time specified in said notice, it
shall be the duty of the board of public works to at once cause the
same to be done in the manner herein provided.     *     *     *     *

" 'Sec. 21. It shall be the duty of every owner, agent, or occupant
of any lot, notified by the board of public works according to the
foregoing provisions of this ordinance, to promptly comply with said
notice, and construct or repair the sidewalk as ordered; and in
case any owner, agent, or occupant shall neglect to build or repair

any sidewalk within the time prescribed in the notice of the board of public works, as provided in this ordinance, and the city, by any suit or other proceeding, is compelled to pay damages to any person or persons on account of such neglect, such owner, agent, or occupant shall be liable to the city for the amount of damages so paid, and the same may be collected, if necessary, in an action of debt by suit in the proper court.' "

The right of the plaintiff to a recovery in this case depends upon the question whether it was the primary duty of the defendant, as between himself and the plaintiff, to keep the sidewalk in front of his premises in repair, so as not to cause accident or injury to persons traveling over the same.

Exclusive control of the streets, including the sidewalks, is by the charter conferred upon the common council of the city. It is entirely discretionary with that body to say when and where sidewalks shall be constructed in front of adjacent property.

There is no duty imposed upon an adjoining owner, or liability created for neglect, either to construct or keep in repair a sidewalk at the common law. The duty and liability are exclusively statutory. This duty is first imposed upon the adjacent land-owner when the common council takes action under and in accordance with the provisions of the charter above quoted. When such action is taken, the duty to construct or repair is primarily laid upon the adjacent owner. Neglecting to perform this duty, it is secondarily imposed upon the board of public works, an agent of the municipality.

Does the imposition of this duty upon the board of public works relieve the adjacent owner of his duty to repair? Counsel for defendant contends that it does. His argument is that, if the owner neglected for the specified time,—

" Then it became the duty of the board at once to do or cause the same to be done, and to assess the cost and expense upon the adjacent lot."

And in this he insists that—

"It is clear that, after the expiration of the ten days, the duty to build the walk rested upon the city."

He calls attention to the positive language of the statute, to wit:

"It shall be the duty of the said board to at once do or cause the same to be done;" and says: "It seems to us absurd to contend that this duty rested upon Mr. Chaffee simultaneously with the board of public works. If it did, then it was proper for both to discharge it simultaneously. That would be clearly impracticable, and it is not conceivable that the Legislature contemplated any such thing."

He contends, therefore,—

"That, after the expiration of the ten days, the duty rested upon the city of Detroit alone, and that after that time Mr. Chaffee had no right to build the walk, and no duty with respect to the premises."

Respecting that portion of the statute which reads as follows:

"And the owner so neglecting to build or repair shall be liable to the city for all damages which shall be recoveted against the city for any accident or injuries occurring by reason of such neglect,"—

We quote his argument, as follows:

"The liability over to the city is not imposed generally upon the owner who neglects to 'build or repair,' but upon the owner who '*so*' neglects to build or repair, and he is made answerable over, not for any damages that may be recovered against the city because of *any* neglect, but by reason of '*such*' neglect. This carefully chosen language indicates that the neglect spoken of is the neglect before referred to in the act. Now, the only neglect referred to in the act is the 'neglect, for a time to be specified in the ordinance, to do such building or repairing.'

"We submit, therefore, that the liability over, under this statute, is only for such damages as may be recovered against the city for injuries sustained during the ten days covered by the notice. The charter, providing that the city shall at once cause the walk to be built or repaired after the expiration of the ten-days notice, does not contemplate the possibility of any neglect to build or repair after the expiration

of the ten days,—a consideration which, it seems to us, con-
clusively shows that the liability over of the lot-holder to
the city is limited to injuries that happen during the ten
days within which he is required to build or construct the
walk."

It was conceded upon the trial that the view here contended
for is within the letter of the statute. The charter provision
is in contravention of the common law, and we here desire to
repeat what was said by this Court in *Detroit v. Putnam*, 45
Mich. 263 (7 N. W. Rep. 815), that—

"Where a statute attempts, in derogation of the common
law, to create a liability, we cannot go beyond the clearly-
expressed provisions of the act. Such statutes are not to be
extended or enlarged in their scope by construction."

If the construction contended for by the learned counsel
should be adopted, the owner would necessarily be relieved
from all liability to the city, because he can be guilty of no
negligence until the expiration of the 10 days from the ser-
vice of the notice upon him, and immediately upon the
expiration of that time he becomes relieved of the duty to
build or repair the walk, and the city becomes liable, and
therefore he is not liable at all. This is a *non sequitur.* It
will not do to give the statute such a strict construction as to
make it meaningless. In order to give effect to a statute,
courts will sometimes transpose sentences, so as to place
them in their just connection with the context to which they
relate. The Legislature intended to make the owner liable
over to the city in case it was obliged to pay damages occa-
sioned by the neglect of the owner to perform his duty.

In my opinion, the statute should be construed as if it
read :

"And that if such agent, owner, or occupant shall neglect,
for a time to be specified in the ordinance, to do such build-
ing or repairing, the owner so neglecting to build or repair
shall be liable to the city for any accident or injuries occur-
ring by reason of such neglect," etc., "and it shall be the
duty of the board," etc.

The words "such neglect" refer to the owner "so neglecting to build or repair" within the time limited, and necessarily commences at the expiration of such time.

Neither do I think that the imposition of the duty to at once build or repair, upon the board of public works, relieves the adjacent land-owner of his duty to repair. In either case he or his land is liable for the expense of the construction or repair. The board of public works builds the walk or repairs it, not for the city, but for the owner. The board performs a duty which he has shirked, not one he has shifted upon the board. As before stated, if the duty of the owner ceased or was transferred to the board, he could neither be liable for damages occasioned by his neglect, nor be subjected to a penalty for a failure to perform his duty. It would be impossible for him to be guilty of an actionable neglect of duty. This would render the statute senseless and nugatory.

The parties were not joint tort-feasors. There was a duty resting upon both with respect to the same thing, but it was a separate duty imposed on each, and not joint. The neglect was likewise the separate neglect of each, and not the joint neglect of both. But were this not so, and were they *in pari delicto*, it would be a sufficient answer that the statute expressly authorizes the action to be brought in certain contingencies, such as are detailed in the record before us.

It follows that the judgment must be reversed, and a new trial ordered.

SHERWOOD, C. J., MORSE and LONG, JJ., concurred. CAMPBELL, J., did not sit.